**2026 Tex. Bus. 30**



**The Business Court of Texas,
First Division**

| | | |
|---|---|---|
| COBALT FALCON, LLC, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Cause No. 25-BC01A-0023 |
| | § | |
| AXS INVESTMENTS, LLC, | § | |
| *Defendant*. | § | |

**Memorandum Opinion and Order Construing
the Transaction Agreement Under TRCP 166(g)**

¶1 Before the Court is a question of law that is partially dispositive of the above-captioned cause: whether Schedule 2.4 of the *First Amendment to Transaction Agreement* dated effective May 2, 2022, which provides for "Consideration Terms" including monthly payments to be "paid in perpetuity (unless otherwise agreed)" by Defendant/Buyer AXS Investments, LLC to Plaintiff/Seller Cobalt Falcon, LLC requires the continuation of such payments after the closure of the High Yield ETF Fund involved in the

transaction. [1] For the reasons that follow, the Court answers: yes, the unambiguous plain language does so require.

¶2    Delaware law governs this dispute. Def.'s Ex. 1-A at § 11.3; *see also* Def.'s R166(g) Brief at p. 3; Pl.'s Resp. at p. 8. Under Delaware law, contract interpretation is a legal question. *Advent Int'l Corp. v. Servicios Funerarios GG S.A. de C.V.*, No. 2023-0647, 2024 WL 3580934, at * 7 (Del. Ch. June 7, 2024). A contract is to be read as a whole, enforcing clear and unambiguous language by its plain meaning and giving effect to all terms. *See Manti Holdings, LLC v. Authentix Acquisition Co., Inc.*, 261 A.3d 1199, 1208 (Del. 2021); *Page v. Village Prac. Mgmt. Grp., LLC*, No. 2022-0581, 2023 WL 3563049, at *1 (Del. Ch. May 19, 2023).

¶3    Parties' disagreement over interpretation does not create ambiguity in a contract. *Manti Holdings*, 261 A.3d at 1208. Only when susceptible to two or more reasonable interpretations is a contract ambiguous. *See Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192,

---

[1] The original *Transaction Agreement*, effective April 6, 2022, likewise contained "Consideration Terms" to "be paid in perpetuity" in its erroneously-labeled Schedule 2.3. *Cf*. Def.'s Ex. 1-A at § 2.3 ("Excluded Liabilities") *and* § 2.4 ("Purchase Consideration," referencing "monthly amounts determined by the formula set forth in Schedule 2.4 hereto") *with* Schedule 2.3 ("Consideration Terms," setting forth monthly payment calculations and citing Section 2.3).

1196 (Del. 1992). Under Delaware law, "[a]n interpretation is unreasonable if it 'produces an absurd result' or a result 'that no reasonable person would have accepted when entering the contract.'" *Terrell v. Kiromic Biopharma, Inc.*, 338 A.3d 1272, 1277 (Del. 2025) (quoting *Manti Holdings*, 261 A.3d at 1208); *see Capella Holdings, LLC v. Anderson*, No. 9809, 2017 WL 5900077, at *5 (Del. Ch. Nov. 29, 2017).

¶4    At issue here is the contractual provision setting forth the consideration promised by AXS to Cobalt Falcon in exchange for assets relating to the management, administration, and operation of the High Yield ETF Fund. The Agreement and its First Amendment state that AXS shall compensate Cobalt Falcon "for all calendar months following the Closing, in the monthly amounts determined by the formula set forth in Schedule 2.4." Def.'s Ex. 1-B at 1(b) ("Section 2.4. <u>Purchase Consideration</u>"). In turn, Schedule 2.4 calculates the monthly consideration in two parts: "90 bps multiplied by the Conversion AUM; *plus* 15 bps multiplied by any and all AUM in excess of the Conversion AUM as of the end of the calendar month prior to

such payment."[2] *Id.* at 1(f) ("Schedule 2.4 CONSIDERATION TERMS") (emphasis in original). The Agreement and its First Amendment require the monthly payments to be made "in perpetuity (unless otherwise agreed)." *Id.* Cobalt Falcon contends "in perpetuity" means that the payments are to continue regardless of the Fund's existence. Pl.'s Resp. at p. 10. AXS argues this provision only requires the monthly payments to continue while the Fund is operating. Def.'s R166(g) Brief at p. 5.

¶5 As already stated, the contract's plain language calls for monthly payments to be made "in perpetuity (unless otherwise agreed)." The words "in perpetuity" are not inherently ambiguous or susceptible to multiple meanings; in fact, the phrase can be—and has been—clearly defined. "In perpetuity" means "forever; without end." *In perpetuity*, BLACK'S LAW DICTIONARY (12th ed. 2024).[3] Under Delaware law, this plain meaning controls unless there is an ambiguity. AXS contends that an interpretation

---

[2] AUM refers to "total assets under management of the Fund." *See* Def.'s Ex. 1-A at art. I ("Defined Terms"). The parties have represented that, following Fund closure, the "Conversion AUM" is a known and fixed dollar amount, causing the consideration formula to permanently equal the sum of $74,062.45.

[3] The only express limitation imposed on "in perpetuity" is "unless otherwise agreed." It is undisputed that the First Amendment is the last agreement between the parties concerning the consideration.

adopting the plain meaning—the interpretation urged by Cobalt Falcon—would be unreasonable and that AXS can supply a (sole) reasonable alternative. But since deviation from the plain language requires two or more *reasonable* interpretations, the Court cannot adopt the interpretation urged by AXS unless it *and* the interpretation urged by Cobalt Falcon are both reasonable, creating ambiguity. Accordingly, the Court must assess the reasonableness of the interpretations advanced by Cobalt Falcon and by AXS.

¶6    The Court finds that the interpretation relied on by Cobalt Falcon is reasonable. The parties' use of the phrase "in perpetuity" must be given effect, which can only be achieved under Cobalt Falcon's interpretation. *See Reybold Constr. Co. v. Lennar Corp.*, No. N22C-06-206, 2025 WL 2346985, at *10 (Del. Super. Ct. Aug. 13, 2025). In *Reybold Construction*, the Superior Court of Delaware rejected an interpretation of "for actual costs" that would include a management fee on the basis that, if the parties intended to include such a fee, "they would have expressly stated it." *Id.* Delaware law does not support the adding of unwritten conditions that the parties could have included. *See Allied Capital Corp. v. GC-Sun Holdings, L.P.*, 910 A.2d 1020, 1035 (Del. Ch. 2006). Further, as Cobalt Falcon noted, the contract required payments "for all calendar months following the Closing," which similarly

indicates no end date. Def.'s Ex. 1-B at 1(b) ("Section 2.4. <u>Purchase Consideration</u>"). Reading "in perpetuity" according to its plain meaning gives effect to all of the Agreement's words and creates certainty as to the duration of the payments.

¶7    In opposition to this reading, AXS makes two arguments: First, AXS contends that Cobalt Falcon's interpretation renders other contractual provisions meaningless. *See Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010) (noting a contract interpretation that renders a provision meaningless or mere surplusage yields an absurd result). Second, AXS contends that a forever payment obligation would be absurd on the facts presented. Thus, AXS argues Cobalt Falcon's interpretation is unreasonable under Delaware law, and its proposed interpretation is the sole reasonable one.

¶8    But AXS has not convincingly demonstrated that interpreting "in perpetuity" by its plain meaning renders any provision of the Agreement meaningless. AXS makes this argument primarily in relation to the maintain-and-operate clause in Section 6.9(b) of the contract. As AXS sees it, "it would be pointless for AXS to use best efforts to maintain the Fund" if the obligation to make payments survived the Fund's closure. Def.'s R166(g) Brief at p. 16. There is, however, no connection in the contract between the two-part

consideration to be paid by AXS to Cobalt Falcon for management of the Fund in Schedule 2.4, on the one hand, and AXS's obligations to maintain and market the fund in Section 6.9, on the other. *Cf.* Def.'s Ex. 1-B at 1(c) (Section 6.9) *with* Sched. 2.4.

¶9    And as Cobalt Falcon points out in response, the obligation of AXS to use "best efforts" to maintain and operate the Fund and "commercially reasonable efforts" to market the Fund and attempt to grow the AUM both benefit the second component of the compensation to Cobalt Falcon: the multiple "bps" of excess AUM. *See* Pl.'s Resp. at pp. 13-14. The Court agrees that this is a reasonable interpretation, as the Fund cannot have excess AUM to form the basis of the second component of the compensation if the Fund is not maintained. Because the obligation in Section 6.9(b) is not expressly tied to the first part of the consideration formula in Schedule 2.4, and because it can be reasonably read to have meaning and purpose in connection with the second part of the consideration formula, the Court rejects AXS's contention that Cobalt Falcon's interpretation of "in perpetuity" renders Section 6.9(b) meaningless and that AXS's interpretation alone gives that provision meaning.

¶10   Relatedly, the Court rejects AXS's argument that the consideration terms have no meaning unless the Fund exists. It is undisputed

that the "Conversion AUM," a defined term in the Agreement, is capable of being—and has been—calculated at a fixed rate by the parties. *See* Pl.'s Resp. at p. 19. Regardless of how the sum was determined, and although the Conversion AUM will now never change due to the Fund's closure, the parties can (and have) calculate(d) the Conversion AUM and the resulting consideration due monthly under Schedule 2.4 of the Agreement. Accordingly, the Fund's closure does not render it impossible to calculate the consideration owed. Thus, the provision has meaning whether the Fund exists or not.

¶11    AXS's second argument is that enforcing a monthly payment obligation in perpetuity leads to an absurd result because it reads the contract to say AXS "agreed to pay more than a *trillion dollars* for these same rights that were, at the time of the parties' transaction, worth approximately 40% less than $3.1M"—the price paid by Cobalt Falcon in a previous transaction.[4] Def.'s Brief at p. 3 (emphasis in original). Specifically, AXS argues, "No

---

[4] AXS's view that Cobalt Falcon's interpretation results in an absurd windfall to Cobalt Falcon treats the value of the consideration at the time of the contract as the sum total of an infinite number of future payments. Cobalt Falcon contends it bargained for the then-present value of those future payments, now calculated to be $7,711,870.47. *See* Pl.'s Ex. A-15 (McKenna expert report) at F(8)(c). But the Court cannot consider extrinsic evidence—such as the amount paid by Cobalt Falcon in a previous transaction or expert opinions on the present-day value of the bargained-for consideration. *See Holzbaur v. Trolley Square Hosp., LLC*, 340 A.3d 603, 610–11 (Del. Ch. 2025), aff'd sub nom. *Holzbaur v. Trolley Square Hosp. Grp., LLC*, No. 289, 2025, 2026 WL 261522 (Del. Feb. 2, 2026).

reasonable market participant would agree to make monthly payments forever in exchange for fund management rights that would cease to exist and become worthless upon the fund's closing, which (no matter how successful) would come at some point in time. . .." Def.'s Brief at p. 22. But importantly, AXS neglects to factor in that closure of the Fund was entirely within its own hands.

¶12    The idea that a party, holding an asset that may generate revenue in perpetuity, would trade that asset for a perpetual obligation, is not inherently absurd. *See ITG Brands, LLC v. Reynolds Am., Inc.*, No. 2017-0129, 2025 WL 670818, at *15 (Del. Ch. Mar. 3, 2025), aff'd by 351 A.3d 519 (Del. 2025) (enforcing a contractual obligation for payments in perpetuity over objections on grounds different from those presented here). Conversely, AXS's position—taken to its logical conclusion—requires the Court to find that Cobalt Falcon agreed to relinquish control over the Fund (and the resulting revenue stream) in exchange for payments that would be made only as long as AXS elected to keep the Fund open and continue payments. Reading the agreement to give AXS unilateral control, post-contract, over the consideration to be paid presents an absurd outcome, rendering AXS's interpretation unreasonable.

¶13   Accordingly, the Court is left with a reasonable interpretation urged by Cobalt Falcon which is wholly consistent with the plain language in the Agreement, and an unreasonable interpretation urged by AXS which would require the Court to write limitations into the Agreement that do not exist and would contradict the words actually used. Further, even if Cobalt Falcon's interpretation *could* be viewed as absurd or unreasonable, ambiguity cannot result from two competing *un*reasonable interpretations. *See Rhone-Poulenc Basic Chems.*, 616 A.2d at 1196 (discussing ambiguity as the product of two or more reasonable interpretations). Either way, the plain language must control.

¶14   In sum, while Cobalt Falcon's interpretation may result in a financial boon to Cobalt Falcon, that result is not veiled or obscured in the contract—it is expressly stated, in plain terms. The parties' ability to constrain the reach of a given term is evident in the Agreement, including in Schedule 2.4. The Court cannot rewrite the consideration obligations simply

because AXS may have been mistaken as to their duration[5] or otherwise regrets the bargain it struck. *In re Tibco Software Inc. S'holders Litig.*, No. 10319, 2014 WL 6674444, at *13 (Del. Ch. Nov. 25, 2014) ("Reformation is not an equitable license for the Court to write a new contract at the invitation of a party who is unsatisfied with his or her side of the bargain.").

¶15    For these reasons, the Court holds that there are not two or more reasonable interpretations of "in perpetuity" in the Agreement.  Because the Agreement is unambiguous, its plain language applies. It thus follows that the contractual obligation to make payments "in perpetuity (unless otherwise agreed)" means exactly what it says: the payments are to continue in perpetuity (forever) unless otherwise agreed to by the contracting parties.

---

[5] Unilateral mistake can be remedied under Delaware law only if enforcement of the contract would be unconscionable, the mistake concerns consideration, the mistaken party exercised ordinary care, and the *status quo* can be maintained for the non-mistaken party. *Matter of ENSTAR Corp.*, 604 A.2d 404, 411, 413 (Del. 1992). But even in such cases, rescission is the sole available remedy unless the mistaken party shows that the non-mistaken party was aware of the mistake and remained silent. *Scion Breckenridge Managing Member, LLC v. ASB Allegiance Real Est. Fund*, 68 A.3d 665 (Del. 2013) (overruling *ENSTAR*, 604 A.2d 404, to the extent it fails to recognize availability of reformation where party's unilateral mistake was known by opposing party). No arguments concerning mistake were presented in this case.

SO ORDERED.

_Andrea K. Bouressa_
ANDREA K. BOURESSA
Judge of the Texas Business Court,
First Division

SIGNED ON: May 19, 2026.

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 115108525
Filing Code Description: Proposed Order
Filing Description: Memorandum Opinion and Order Construing the Transaction Agreement Under TRCP 166(g)
Status as of 5/19/2026 4:35 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Kay Ridenour | | kridenour@lynnllp.com | 5/19/2026 4:32:19 PM | SENT |
| Scott Smoot | | ssmoot@lynnllp.com | 5/19/2026 4:32:19 PM | SENT |
| Margaret AngelitaDelgadillo | | angelita@martinpowers.com | 5/19/2026 4:32:19 PM | SENT |
| Meagan MartinPowers | | meagan@martinpowers.com | 5/19/2026 4:32:19 PM | SENT |
| NATALIE STALLBOHM | | nstallbohm@lynnllp.com | 5/19/2026 4:32:19 PM | SENT |
| Emily AWebb | | ewebb@bradley.com | 5/19/2026 4:32:19 PM | SENT |
| William SSnyder | | wsnyder@bradley.com | 5/19/2026 4:32:19 PM | SENT |
| Raylee Hopkins | | rhopkins@bradley.com | 5/19/2026 4:32:19 PM | SENT |
| Robin McCormack | | rmccormack@bradley.com | 5/19/2026 4:32:19 PM | SENT |
| Courtney Myers | | cmyers@bradley.com | 5/19/2026 4:32:19 PM | SENT |
| David C.Miller | | dmiller@bradley.com | 5/19/2026 4:32:19 PM | SENT |
| Chris Schwegmann | | cschwegmann@lynnllp.com | 5/19/2026 4:32:19 PM | SENT |
| Leo Park | | lpark@lynnllp.com | 5/19/2026 4:32:19 PM | SENT |
| Boyce Holleman | | bholleman@bradley.com | 5/19/2026 4:32:19 PM | SENT |
| Martin Powers & Counsel Paralegals | | paralegals@martinpowers.com | 5/19/2026 4:32:19 PM | SENT |
| Doug Hirsch | | dhirsch@sadis.com | 5/19/2026 4:32:19 PM | SENT |
| Quane Griffith | | qgriffith@bradley.com | 5/19/2026 4:32:19 PM | SENT |
| Jennifer Rossan | | jrossan@sadis.com | 5/19/2026 4:32:19 PM | SENT |
| Rosa Cortez | | rosa.cortez@txcourts.gov | 5/19/2026 4:32:19 PM | SENT |
| Lexie Alexander | | lalexander@bradley.com | 5/19/2026 4:32:19 PM | SENT |